UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LUKE BRISSIE | Criminal No. 25-mj-3094 (KAR) |

GOVERNMENT'S MEMORANDUM IN SUPPORTS OF ITS
MOTION FOR PRETRIAL DETENTION OF DEFENDANT

The United States of America, by and through its undersigned counsel ("the Government"), respectfully submits this memorandum in support of its motion for the pretrial detention of defendant Luke Brissie ("the defendant" or "Brissie").

1. Preliminary Statement

On April 5, 2025, Brissie used his Instagram account to issue numerous threats to kill a law enforcement officer in violation of 18 U.S.C. § 875(c). In these communications, Brissie expressed his admiration for a school shooter, Audrey Hale, who murdered educators and students at a school in Nashville. The recipient of Brissie's threats were the law enforcement officers who responded to that scene and saved the lives of dozens of other students and teachers. In these same communications, Brissie identified a grocery store near his home in Massachusetts and explained how he was going to commit a mass stabbing in that store. Because no condition or combination of conditions can reasonably assure the safety of the community, 18 U.S.C. § 3142(e), he must be detained.

2. <u>Factual Background</u>

On April 5, 2025, the Metropolitan Nashville Police Department ("MNPD") received notification from M.C., a police officer with the Metro Nashville Police Department ("MNPD"), that he received threatening messages from an Instagram account bearing the username luke_g_brissie, display name, luke g brissie. The account user, later identified as Luke Brissie, sent M.C. a direct message where he threatened to place a bomb in M.C.'s patrol vehicle, place a bomb in his house, or shoot M.C. The sender also threatened to commit a mass stabbing at a local grocery store, bomb an FBI building, and kill another person the sender identified as M.C.'s fellow police officer and acquaintance. M.C., who was in the state of Tennessee at the time he received the threatening communication, took screenshots of the messages from Brissie which are below and on subsequent pages:

2







FBI Nashville contacted FBI Boston to notify them of the threatening communication and requested that FBI Boston locate and interview Brissie as soon as possible. FBI Boston successfully located Brissie and interviewed him at his residence in Amherst, Massachusetts. During the interview, Brissie admitted to contacting M.C. and expressed surprise that his messages reached M.C. Brissie stated that he intended to lure M.C. to Massachusetts so he could act on his threats. Brissie also told interview agents he intended to bomb the FBI Boston Field Office and had, in fact, planned on conducting a mass stabbing at a nearby grocery store the morning he was encountered by law enforcement.

3.  Legal Standard

The Government moves for Brissie's detention based upon his commission of a crime of violence and his threats of committing mass violence at targets of opportunity in his local community. 18 U.S.C. §§ 3142(f)(1)(A) and 3156(a)(4)(A); *United States v. Santoro*, 359 F.Supp.3d 122, 126-28 (D. Maine 2019) (holding that Section 875(c) is a crime of violence under the Bail Reform Act); *United States v. Dai*, 99 F.4th 136, 139-40 (2d Cir. 2024) (holding, in a Section 875(c) prosecution, that the phrase "for which a maximum term of imprisonment of 10 years or more is prescribed" does not modify the "crime of violence" in § 3142(f)(1)(A) and affirming defendant's pretrial detention).[1]

Under the Bail Reform Act of 1984, pretrial detention is required if the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The Court must find either (1) by clear and convincing evidence, that the defendant is a danger to the

---

[1] The Second Circuit noted that the defendant did not dispute that Section 875(c) violations are crimes of violence under Section 3142. *Dai*, 99 F.4th at 139 n5.

6

community or (2) by a preponderance of the evidence, that the defendant poses a risk of flight. 18 U.S.C. § 3142(f).

Title 18, United States Code, Section 3142(g) outlines factors permitted to be considered by the Court in determining whether to order pre-trial detention:

> [I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, [the judicial officer shall] take into account the available information concerning–
>
> (1)   The nature and circumstances of the offense charged . . .;
>
> (2)   the weight of the evidence against the person;
>
> (3)   the history and characteristics of the person, including
>
> > (A)   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B)   whether, at the time of the current offense or arrest, the person was on probation, on parole or on other release pending trial, sentencing, appeal, or completion of a sentence for an offense under Federal, State, or local law; and
>
> (4)   the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

At the detention hearing, "the rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information . . . ." 18 U.S.C. § 3142(f).

   4.   <u>The Defendant Should Be Detained</u>

Brissie should be detained because he is a danger to the community, and all of Section

3142(g) factors strongly favor detention.

      a.      <u>The Offense Is Grave</u>

The "nature and circumstances of the offense charged" clearly weigh heavily in favor of detention. 18 U.S.C. § 3142(g)(1).

First, Brissie's threats targeted a wide range of victims, including: (1) law enforcement officers based in Nashville; (2) his neighbors and fellow Massachusetts citizens; (3) federal law enforcement officers in Boston; and (4) survivors of the Covenant School (Nashville) shooting that inspired Brissie's threats.

Second, Brissie's threats involved explicit and repeated threats to commit acts of violence. Brissie not only threatened to kill two Metro Nashville Police Department officers, but he also threatened to kill his fellow citizens in a mass stabbing attack at a grocery store close to his home. Then, when confronted in the early morning hours by law enforcement, Brissie shared that he had indeed planned to conduct an act of mass violence at a nearby grocery store.

Third, Brissie has become fixated on mass violence. Not only did Brissie threaten to kill law enforcement officers and commit an act of mass violence himself, he has also become fixated on someone who was killed while committing an act of violence. As Brissie expressed, he considers Audrey Hale, a murderer, as his "spiritual mother," and the inspiration for his desire to commit further acts of violence. This sort of fixation poses an incalculable risk to the public that cannot be curtailed with any set of conditions of release.

      b.      <u>The Evidence Is Powerful</u>

The "weight of the evidence" is extremely strong and weighs heavily in favor of detention. 18 U.S.C. § 3142(g)(2). As described above, Brissie's own words, made repeatedly on Instagram and to law enforcement, directly evidence the crimes set forth above. Moreover, proof of Brissie's

8

operation of the Instagram account at issue is overwhelming and is detailed in the Criminal Complaint.

        c.        The Defendant's Personal History Favors Detention

The defendant's "history and characteristics" also favor detention. 18 U.S.C. § 3142(g)(3). Although Brissie does not have any criminal convictions, he has a long history of incidents involving law enforcement.

        d.        The Defendant's Release Endangers the Community

As described above, the defendant presents a grave danger to the community if released. He threatened to kill both law enforcement officers and private individuals (including a direct threat to a nearby grocery store). *See, e.g.*, *United States v. Dai*, No. 3:23-cr-478 (BKS/TWD), 2023 WL 11016392, at *6-10 (N.D.N.Y. Dec. 19, 2023) (affirming detention of defendant who posted messages threatening to kill Jewish students, rape Jewish women, and behead Jewish children); *United States v. Capriotti*, No. 21-CR 16, 2021 WL 229660, at *3-6 (N.D. Ill. 2021) (stating that "[t]he threats as alleged in this case represent, in and of themselves, a distinct harm to the community" and "[t]he Court is ordering Defendant's detention out of a concern that the risk to community safety stems from the risk that he will communicate more threats . . ."); *United States v. Choudhry*, 941 F.Supp.2d 347, 354 (E.D.N.Y. 2013) (stating "[t]his uncontroverted evidence of explicit and chilling threats to kill numerous people in Pakistan is sufficient, on its own, to warrant pre-trial detention for being charged with a violent crime."); *United States v. Pietila*, No. 1:23-cr-78, 2023 WL 4313162, at *3-5 (W.D.Mich. July 3, 2023) (reasoning that "[w]hile the plot he proposed in his messages may be beyond his ability, it is not a difficult task to find a gun and kill others before killing oneself.")

As the Court in *Dai* reasoned:

"[Defendant's] threats alone represent a distinct harm to the community." "Threats, particularly those as explicit, graphic, and repeated as those alleged in this case, harm people. They terrorize people. They affect the safety, security and well-being of people. They induce fear." And, if released, "[a]ny access at home or elsewhere, even momentary access to virtually any internet-capable cell phone, computer, laptop, or similar electronic device, whether prohibited or not, would allow [D]efendant to create and post more violent threats."

*Dai*, 2023 WL 11016392, at *9 (citations omitted); *see United States v. Kane*, No. 3:20-mj-5054 TLF, 2020 WL 1660058, at *3-5 (W.D.Wash. Apr. 3, 2020) (stating "[t]he Court would not be able to effectively supervise the defendant's access to all means of digital communication – pretrial services professionals cannot be expected to follow him everywhere and determine whether he is using his own device (or someone else's device) or directing others to communicate plans to flee, or to communicate threats.").

5. Conclusion

For the preceding reasons, the Government respectfully requests that the defendant be detained pending his trial.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: */s/ Caroline Merck*
Caroline Merck
Assistant U.S. Attorney
caroline.merck@usdoj.gov

**Certificate of Service**

I hereby certify that this document will be filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

By: */s/ Caroline Merck*
CAROLINE MERCK
Assistant U.S. Attorney

Dated: June 5, 2025

10